IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARISSA L. THOMPSON            :

                                        :

      v.                            :    Civil Action No. DKC 23-2458

                                        :

THE HONORABLE LLOYD J. AUSTIN,
III, in his official capacity as:
Secretary of Defense, et al.

                                        :

**MEMORANDUM OPINION**

Carissa L. Thompson, Plaintiff, a former service member of the United States Air Force, brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, to challenge the decision of the Physical Disability Board of Review declining to alter her disability rating.  Presently pending and ready for resolution are the motion for summary judgment filed by Defendants Lloyd J. Austin III, in his official capacity as Secretary of Defense, Frank Kendall III, in his official capacity as Secretary of the Air Force, and the Physical Disability Board of Review ("PDBR") (collectively, "Defendants") (ECF No. 62), and Plaintiff's cross-motion for summary judgment (ECF No. 68).  The issues are briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion for summary judgment will be granted and Plaintiff's cross-motion for summary judgment will be denied.

## I.    Background

### A.    Statutory and Regulatory Framework

An active duty service member who is found "unfit to perform . . . because of physical disability incurred while entitled to basic pay," 10 U.S.C. §§ 1201(A), 1203(A), "may be either 'retired' or 'separated' from service, depending on the degree of disability[.]" *Sissel v. Wormuth*, 77 F.4th 941, 942 (D.C. Cir. 2023).  The Secretary of the relevant military department determines if the disability renders the service member "unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C. §§ 1201(a), 1203(a).  A service member determined to have a disability rendering the member unfit, may either be "retired" or "separated" from service, depending on the degree of the member's disability.  10 U.S.C. §§ 1201(a) 1203(a).  "Retired" service members are eligible to receive retirement benefits, while "separated" service members receive severance pay with no retirement benefits.  10 U.S.C. §§ 1201(a), 1203(a).  A service member, with fewer than 20 years of completed service, may be eligible for retirement benefits if the Secretary of the relevant military department determines that "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the

determination," and one of four other conditions is satisfied.[1] 10 U.S.C. § 1201(b)(3)(B). If the service member's disability is determined to be below the 30% threshold, "the member may be separated from the member's armed force, with severance pay" but without retirement benefits. *Id.* § 1203(a). Retirement benefits include "lifetime retirement pay, healthcare, and commissary privileges." *U-Ahk-Vroman-Sanchez v. U.S. Dep't of Def.*, No. 19-cv-3141, 2021 WL 394811, at *1 (D.D.C. Feb. 4, 2021).

### 1.   Medical Evaluation Board

The Air Force makes determinations pursuant to this statutory scheme under the Disability Evaluation System (the "DES"). Air Force Instruction ("AFI") 36-3212 ¶ 1.1.2 (2024). The Medical Evaluation Board ("MEB") "prepares documents required to identify medical defects or conditions that do not meet retention standards and may disqualify the member for continued active duty." AFI 36-3212 ¶ 2.2. If the MEB determines the service member's medical conditions "may prevent [the service member] from reasonably performing the duties of [the service member's] office, grade,

---

[1] In addition to a 30 percent disability rating, a service member must satisfy one of the following to be eligible for medical retirement: (i) "the disability was not noted at the time of the member's entrance on active duty"; (ii) "the disability is the proximate result of performing active duty"; (iii) "the disability was incurred in line of duty in time of war or national emergency"; or (iv) "the disability was incurred in line of duty after September 14, 1978." 10 U.S.C. § 1201(b)(3)(B) (2024).

rank, or rating," it will refer the case to the Physical Evaluation Board ("PEB").  Department of Defense Instruction (DoDI) 1332.18 3.2(d) (2022).

### 2.   Physical Evaluation Board

The PEB determines "the fitness of service members with medical conditions to perform their duties."  AFI 36-3212 ¶ 3.1. If the PEB finds a service member is unfit, it recommends appropriate disposition.[2]  AFI 36-3212 ¶ 3.17.  If a disability is found, the PEB applies the Department of Veteran's Affairs ("VA") disability ratings or ratings under the Veterans Affairs Schedule for Rating Disabilities ("VASRD").  AFI 36-3212 ¶ 3.18.  The informal PEB's findings become finalized if a service member fails or refuses to make an election or submit a rebuttal within the specified time limit.  AFI 36-3212 ¶ 3.24 (2024).

### 3.   VA Compensation and Pension Examination

A retired or separated service member may file a separate claim for benefits with the VA.  AFI 36-2102, Attach. 32.  The VA conducts a Compensation and Pension ("C&P") examination and determines a disability rating separate from that determined under

---

[2] The PEB may recommend the following dispositions: (1) return to duty; (2) permanent disability retirement; (3) placement on the temporary disability retired list; (4) discharge with severance pay; (5) discharge under 10 U.S.C. § 1207; (6) other discharge; or (7) revert with or without disability benefits.  AFI 36-3212 ¶ 3.17 (2004).

the DES scheme.  AFI 36-3212 ¶ 1.11.  Unlike the PEB, the VA is authorized to rate all service-connected conditions, not just those that made the service member unfit.  AFI 36-3212 ¶ 1.11.

### 4.   Physical Disability Board of Review

In 2008, Congress passed the Dignified Treatment of Wounded Warriors Act ("DTWWA"), providing for creation of the PDBR to review, upon request, the findings and decisions of a PEB with respect to an individual who was separated from the armed forces between September 11, 2001, and December 31, 2009, due to unfitness for duty due to a medical condition with a disability rating of 20% or less.  10 U.S.C. § 1554a(a), (c)(1).  "Upon the request of a covered individual . . . the [PDBR] shall review the findings and decisions of the [PEB]."  10 U.S.C. § 1554a(c)(1).  The PDBR's review "shall be based on the records of the armed force concerned and such other evidence" submitted in support of the former service member's application.  10 U.S.C. § 1554a(c)(1); *see also Crockwell v. Austin*, 2024 U.S. Dist. LEXIS 55955, at *6 (D.D.C. Mar. 28, 2024).  The PDBR must "conduct reviews of the disability rating(s) of the covered individual in accordance with the VASRD in effect at the time of separation."  DoDI 6040.44, Enc. 3, § 4(f) (2015).  Additionally, the PDBR must "[c]ompare any VA disability rating for the specifically military-unfitting condition(s) with the PEB combined disability rating" and "[c]onsider any variance in its

deliberations and any impact on the final PEB combined disability rating, particularly if the VA rating was awarded within 12 months for the former Service member's separation."  DoDI 6040.44, Enc. 3, § 4(a)(5) (2015).  "Where there is a question as to which of two evaluations shall be applied," the PDBR must assign "the higher evaluation . . . if the disability picture more nearly approximates the criteria required for that rating."  38 C.F.R. § 4.7 (2024).  Any reasonable doubt regarding "the degree of disability . . . shall be resolved in favor of the [former service member].  38 C.F.R. §§ 3.102, 4.3 (2024).

Based on its review, the PDBR may recommend to the Secretary "the issuance of a new disability rating, the modification of a previous rating, the recharacterization of a soldier's separation to include medical retirement, or no change."  *Sissel*, 77 F.4th at 944 (citing 10 U.S.C. § 1554a(d)(1)–(4)).  If the PDBR provides a recommendation, the Secretary may correct the military records of an individual in accordance with the PDBR's recommendation.  10 U.S.C. § 1554a(e)(1).  If the PDBR makes a recommendation "not to correct the military records," action taken by the Secretary based on that recommendation is final as of the date of the PDBR recommendation.  *See* 10 U.S.C. § 1554a(e)(3).  If the former service member is dissatisfied with the Secretary's determination,

the member may seek judicial review under the APA.  *See* 5 U.S.C. § 702.

## B.    Factual Background[3]

Plaintiff served as an Airman First Class in the United States Air Force from November 25, 2002, to May 23, 2005.  She was injured while riding as a passenger on a two person all terrain vehicle on July 31, 2003.  She was thrown from the vehicle, which rolled over on her, injuring her back.  She was hospitalized for two weeks, placed in a brace, and prescribed narcotics for pain.  She returned to military duty, attempted to perform her duties, and underwent further treatment throughout the remainder of 2003 and the first half of 2004.

On July 26, 2004, she underwent a Narrative Summary examination as part of the MEB process.  She reported persistent pain since coming out of the brace, pain and discomfort within 30 to 60 minutes of waking up, pain persisting while standing up, and limited ability to walk or use an elliptical.  The examiner noted:

> Physical examination reveals a normal gait. . . .  The patient has full range of motion of the spine, being able to flex forward and touch her toes to the floor and going to full extension with some minor tightness at the level of her injury. The patient is also able to fully lateral side-bend bilaterally with focal midline pain at the level of her injury.  Neurologic examination reveals 5/5 motor strength in

---

[3] Unless otherwise noted, the following facts are undisputed.

> bilateral hip flexors, quadriceps, extensor
> hallucis longus, tibialis anterior and
> gastric-coleus complexes. Deep tendon
> reflexes are 2+ equal and symmetric
> bilaterally in patellar and Achilles tendons.
> . . .

(ECF No. 53-3, at 108). For the Disposition and/or
Recommendations, the evaluator wrote:

> [Plaintiff] has been on profile now for twelve
> months with significant pain at the level of
> her L1 vertebral compression fracture. She
> has been treated with prolonged physical
> therapy, but remains with pain focal at her
> injury site. She may be a candidate for a
> lumbar kyphoplasty versus a posterior spinal
> fusion per Dr. Christiansen. She will follow-
> up with Dr. Syr, the new spine surgeon for
> further recommendations concerning surgical
> intervention. She should not be required to
> perform prolonged walking or standing.

(*Id.* at 109).

On February 17, 2005, the MEB issued a report referring her
case to a PEB. On April 6, 2005, the PEB determined that she was
unfit for duty and assigned her a disability rating of 10%.[4] Thus,

---

[4] Defendant suggests that Plaintiff waived a claim that the informal PEB finding was erroneous because she did not seek a formal PEB hearing, citing *Gant v. United States*, *Van Cleave v. United States*, *Stine v. United States*. (ECF NO. 62-1, at 14). Plaintiff is not challenging the PEB finding directly. Instead, she is using the legislatively created right to seek review of that finding by the PDBR. After Plaintiff pointed out the contrary authorities, *e.g. Watson v. United States*, 113 Fed. Cl. 615, 632 (2013), *decision clarified*, 118 Fed. Cl. 266 (2014), modified, No. 12-785C, 2015 WL 4914966 (Fed. Cl. Aug. 17, 2015) (ECF No. 68-1, at 29), the government shifted its argument to suggest that her earlier "acceptance" of the rating indicated acquiescence in the correctness of the rating. (ECF No. 71, at 10).

on May 23, 2005, she was medically separated, and not medically retired.  She received a one-time lump sum payment of $6,190.80.

In 2005, Plaintiff filed a disability claim with the Department of Veterans Affairs.  After a C&P exam, she was assigned a rating of 40% "for forward flexion of the thoracolumbar spine of 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine" under Code 5235, 38 C.F.R. 4.71a.  The examiner noted that she wore a brace for the exam.

Plaintiff sought redetermination of her disability rating under the DTWWA on November 19, 2013.  In a decision dated April 29, 2016, the PDBR decided not to amend her 10% disability rating.  The decision was accepted by the Secretary of the Air Force on June 10, 2016.

### C.  Procedural Background

On April 19, 2022, Plaintiff filed a complaint against Lloyd J. Austin III, in his capacity as Secretary of Defense, Frank Kendall III, in his capacity as the Secretary of the Air Force, and the PDBR.  (ECF No. 1).  On January 26, 2024, Defendants filed a motion for summary judgment.  (ECF No. 62).  Plaintiff filed a cross motion for summary judgment and opposition to Defendants' motion on May 10, 2024.  (ECF No. 68).  Defendants filed a reply in support of their motion and response to Plaintiff's motion on

June 21, 2024.  (ECF No. 71).  On July 26, 204, Plaintiff filed a response in support of her motion.  (ECF No. 72).

## II.  Standard of Review

"Reviews of agency action in the district courts must be processed *as appeals*." *City of Columbus v. Cochran*, 523 F.Supp.3d 731, 742 (D.Md. 2021)(quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) (emphasis in original)). "[M]otions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal." *City of Columbus v. Cochran*, 523 F.Supp.3d at 742(quoting *Olenhouse*, 42 F.3d at 1580); *see also Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 305 F.R.D. 256, 281 (D.N.M. 2015). "Accordingly, district courts reviewing agency action do not determine whether a 'genuine dispute as to any material fact' exists, Fed.R.Civ.P. 56, and instead 'engage in a substantive review of the record to determine if the agency considered relevant factors or articulated a reasoned basis for its conclusions[.]'" *N.M. Health Connections v. United States*, 312 F.Supp.3d 1164, 1171 (D.N.M. 2018) (quoting *Olenhouse*, 42 F.3d at 1580).  Summary judgment "serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Charter Operations of Alaska v. Blank*, 844 F.Supp.2d 122, 127 (D.D.C. 2012).

Under the APA the reviewing court must "hold unlawful and set aside agency action, findings, and conclusions founds to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). "'[A]rbitrary and capricious' review focuses on the reasonableness of the agency's decisionmaking processes." *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009). Under this deferential standard, courts will uphold an agency's final order unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or not supported by 'substantial evidence.'" *Id.* at 1105 (quoting 5 U.S.C. § 706(2)).

> [A]n agency decision is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [offers an explanation for its decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Review under the arbitrary and capricious standard is deferential and narrow. "[A] court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

Nonetheless, the arbitrary and capricious standard "is not meant to reduce judicial review to a 'rubber-stamp' of agency action." *Ohio Valley Env't Coal. V. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). The reviewing court must "engage in a 'searching and careful' inquiry of the record." *Id.* (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

## III. Analysis

Plaintiff challenges, as contrary to law, arbitrary and capricious, and unsupported by substantial evidence, the PDBR's decision not to modify her disability rating. (ECF No. 68-1). Specifically, Plaintiff contends that the PDBR: (1) relied on examinations that were insufficient to be considered under the VASRD; (2) wrongfully discounted the VA's C&P exam; (3) wrongfully disregarded exams containing range of motion observations that contradicted the PDBR's assessment; and (4) failed to resolve reasonable doubt in her favor. (ECF No. 68-1). Defendants contend that the PDBR did not act arbitrarily, capriciously, or contrary to law when it recommended no change in Plaintiff's disability rating. (ECF No. 62-1).

### A. Sufficiency of Challenged Examinations

Plaintiff contends the PDBR's recommendation was based primarily on examinations conducted on June 11, 2004, July 26, 2004, and February 1, 2005. (ECF No. 68-1, at 24). Plaintiff

contends all three exams "failed to record where pain began upon movement" and (2) the February 1, 2005, examination "failed to record [range of motion ("ROM")] at all." (ECF No. 68-1, at 24).

The VASRD requires examiners to "interpret reports of examination in light of the whole recorded history." 38 C.F.R. § 4.2 (2024). If a report provided to a reviewing board "does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2.

After recounting and summarizing the reports and examinations in the record, the PDBR conducted the following analysis:

> The Board agreed that a 10% rating of the back condition was supported by the criteria of "muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height." The Board carefully considered if a higher rating was supported by the evidence in record. The MEB NARSUM examination was performed by an orthopedic surgeon and was performed on 11 June 2004 and the NARSUM was written in July 2004 by the same orthopedic specialist, with no change in the status of the back condition noted, approximately a year after the fx had occurred. The MEB NARSUM examination indicated full back ROM with focal midline pain and "minor tightness' of muscles at the level of the fx. The Board interpreted this description of the CI's ROM as reflecting TL ROM within functional limits. This contention is supported by the second orthopedic opinion in February 2005. No ROM of the TL spine was documented at that visit, but the examiner documented thorough muscle

> strength evaluation, including of the
> iliopsoas muscle, a hip flexor that has its
> origins from the upper lumbar spine, with
> normal strength of all muscles noted and no
> particular difficulty with pain or muscle
> spasm during strength testing was documented.

(ECF No. 53-2, at 5).

Despite Plaintiff's contention, the VASRD does not require an examiner to record where pain begins upon movement. The examiner must only "adequately portray the . . . functional loss." 38 C.F.R. § 4.40 (2024). The June 11, 2004, and July 26, 2004, examinations discuss Plaintiff's pain and functional loss and they each found Plaintiff had full range of motion. (*See* ECF Nos. 53-2, at 156; 53-3, at 108). While the February 1, 2005, examination did not contain ROM measurements, the examiner still discussed Plaintiff's pain and functional loss finding. More importantly, the PDBR recognized and considered the limitations of the February 1, 2005, examination noting that "[n]o ROM of the TL spine was documented at that visit" and explaining that the February 2005 examination supported the observations previously found during the June 11, 2004, examination. (ECF No. 53-2, at 5); *see also Crockwell*, 2024 U.S. Dist. LEXIS 55955, at *14 (finding the PDBR need only acknowledge and consider the shortcomings of examinations to "exercise its judgment in a reasoned way").

Plaintiff has not shown that the PDBR's decision to use the June 11, 2004, July 26, 2004, and February 1, 2005, examinations

in making its determination is unsupported by the administrative record or otherwise arbitrary and capricious.

### B.    The C&P Examination

Plaintiff argues that the PDBR's decision to disregard the C&P examination was unlawful because the PDBR was "bound to give 'special consideration' to the findings of that exam." (ECF No. 68-1, at 26). Specifically, Plaintiff argues: (1) "it was legal error for the PDBR to consider the effects of the brace[;]" (2) "the ROM measurement during the C&P [examination] was based on [Plaintiff's] pain threshold, not the effects of the back brace[;]" and (3) "the [examination] included other findings that supported a 40% disability rating." (ECF No. 68, at 26).

### 1.    PDBR's Consideration of the Back Brace

Plaintiff first argues that the PDBR should not have "considered the effects of the brace" in conducting its review. (ECF No. 68-1, at 26). Plaintiff relies heavily on *Jones v. Shinseki*, 26 Vet.App. 56 (2021), to support her contention. (ECF No. 68-1, at 26-27).

In *Jones*, the court found that "the Board committed legal error by considering the effects of medication . . . when those effects were not explicitly contemplated by the rating criteria." *Jones*, 26 Vet.App. at 59. The court in *Jones* found that the PDBR committed legal error when it considered the *relief provided* by

plaintiff's anti-acid medication in making its determination to deny entitlement to a higher disability rating.  *Jones*, 26 Vet.App., at 61.

Here, unlike in *Jones*, the PDBR mentioned Plaintiff was in a back brace during the exam, but the record does not show that PDBR considered any relief provided by the back brace in reaching its conclusion.  The record shows the PDBR only discussed the back brace for the purpose of explaining why it found the ROM measurement from the C&P examination was not useful for a rating under the VASRD.  (ECF No. 53-2, at 6).

**2.    Decision to Disregard C&P Examination's ROM Measurement**

In reviewing the disability ratings of former service members, the PDBR must "[c]ompare any VA disability rating . . . with the PEB combined disability rating" and "[c]onsider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the VA rating was awarded within 12 months of the former Service member's separation."  DoDI 6040.44, Enc. 3, 4(a)(5) (2015).  Put plainly, the PDBR must do more than acknowledge the VA's ratings.  It must evaluate and weigh them, and if the PDBR disagrees with the VA's ratings, it must say why.  *See U-Ahk-Vroman-Sanchez*, 2021 WL 394811, at 7.

16

The PDBR summarized the VA's finding and conclusions, as follows:

> At the VA Compensation and Pension (C&P) spine examination on 3 August 2005 performed 2 months after separation, the CI reported daily chronic LBP which radiated into both LEs to the knees, with some associated numbness in the left leg, without bowel or bladder problems. She reported she did have a bone scan and X-rays and the VA examiner indicated the X-rays showed "L1 healing." She reported that she did not use a cane or crutches, occasionally used a wheelchair, and wore a hard back brace every day. Additionally, the CI reported eight incapacitating episodes in the past year. She reported she did have a bone scan and X-rays and the examiner indicated the X-rays showed "L1 healing." The examiner noted the CI was wearing a hard back brace which she kept on during the examination and it was difficult to examine her with the brace. The physical examination showed back ROM of forward flexion of 30 degrees (90 degrees normal) with a combined ROM of 110 degrees (240 degrees normal) with painful motion in all planes. Active ROM did not produce any weakness fatigue or incoordination. LE strength, sensation, and reflexes were normal. Lumbar spine X-rays noted a "moderate" wedge shaped compression fx of the L1 vertebra, without other vertebral fxs, and with maintained intervertebral spaces. A remote VA C&P examination performed on 17 March 2008, 34 months after separation, noted that a recent magnetic resonance imaging showed a 50 percent compression fracture of L1, which was healed and stable.

(ECF No. 53-2, at 5).  The PDBR explained that the C&P examination's recorded ROM was not useful for a VASRD rating because Plaintiff wore "a rigid back brace . . . designed to

restrict ROM" during the examination.  (ECF No. 53-, at 6).  In providing an explanation for the ROM variance recorded in the C&P examination, compared to prior examinations, the PDBR satisfied its standard.  *See* DoDI 6040.44; *see also Jones v. U.S. Dept. of Def.*, 2023 WL 3863800, at *6 (D.D.C. June 7, 2023) (finding the PDBR satisfied the requirements of DoDI 6040.44 by explaining "the VA had relied on more outdated examinations.").

### 3.   Other Findings in the C&P Examination

Plaintiff contends that, aside from ROM measurement, the C&P examination report provided other evidence supporting the VA's 40% disability rating.  (ECF No. 68-1, at 29).  She argues that the PDBR's conclusion that her pain was not functionally impairing is speculative and in direct contradiction of the C&P examination. (ECF No. 68-1, at 29).

The VASRD schedule of ratings for the musculoskeletal system provides criteria for determining a veteran's disability rating for spinal injuries.  38 C.F.R. § 4.71a (2024).  Aside from ROM considerations, section 4.71a provides a rating formula based on "incapacitating episodes."  *Id.*  A 10% disability rating is proper where there are "incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months."  *Id.*

18

The PDBR considered Plaintiff's reported "incapacitating episodes" during the C&P examination in conducting its review:

> At the C&P examination the CI reported eight incapacitating episodes in the past year. There were periods of quarters documented in the STR in the 14 months before separation with a total duration of eight days. The Board notes that periods of quarters are not necessarily equivalent to incapacitating specified by the VASRD to require "bed rest prescribed by a physician." However, even if conceded as equivalent to incapacitating episodes in this case, there is no documentation of incapacitating episodes "with a total duration of at least 2 weeks in the past 12 months" to support a higher rating under the alternate VASRD formula for rating the spine.

(ECF No. 53-2, at 6). Here, the record shows the PDBR considered the additional evidence presented in the C&P examination and reached its conclusion under the applicable criteria of § 4.71a.

## C.   Weight of Other Examinations

Plaintiff contends that the PDBR disregarded five examinations containing ROM measurements that "compel a 40% disability rating." (ECF No. 68-1, at 30-33). She contends that the PDBR "was required to reconcile" the examinations that recorded Plaintiff's ROM within normal limits with contrary findings in the examinations done on: (1) September 25, 2003; (2) October 21, 2003; (3) December 13, 2004; (4) August 3, 2005; and (5) March 17, 2008. (ECF No. 68-1, at 30-33).

The PDBR is required to compare any VA disability rating with the PEB combined rating and consider any variance between the VA and PEB ratings "particularly if the VA rating was awarded within 12 months of the former service member's separation."   DoDI 6040.44, Enc. 3, § 4(a)(5) (2015).   The PDBR is required to weigh the VA's determinations and explain why it disagrees, placing particular emphasis on any award given within 12 months of separation.   *U-Ank-Vroman-Sanchez*, No. 19-cv-3141-APM, 2021 WL 3984811, at *7 (D.D.C. Feb. 4, 2021).

The September 2003 and October 2003 examinations took place more than 12 months before Plaintiff's May 23, 2005, separation. Similarly, the March 2008 examination occurred more than 2 years after Plaintiff's separation.   The length of time between Plaintiff's separation and these exams makes them less probative than the examinations done closer to Plaintiff's separation date.

The December 13, 2004, examination was discussed in detail by the PDBR, and the ROM variance recorded during that examination was rectified by the later February 1, 2005, examination.   (ECF No. 53-2, at 4-6).   Although the December 2004 examination showed a lower ROM, Plaintiff's February 2005 examination showed an improved condition which logically supports the PDBR's conclusion that a higher disability rating was not warranted.

As discussed in detail, the PDBR sufficiently explained its reasoning for finding the August 3, 2005, ROM measurements unhelpful for evaluative purposes.  (ECF No. 53-2, at 6).

Plaintiff has not shown that the PDBR's decision to give less weight to the September 2003, October 2003, December 2004, August 2005 and March 2008 examinations in making its determination is unsupported by the administrative record or otherwise arbitrary and capricious.

### D.   PDBR's Compliance with the VASRD

Plaintiff contends that the PDBR failed to comply with VASRD sections 4.3 and 4.7.

Section 4.3 of the VASRD states "[w]hen after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant."  38 C.F.R. § 4.3 (2024). Section 4.7 requires, in cases of doubt, that the PDBR applies "the higher evaluation . . . if the disability picture more nearly approximates the criteria required for that rating."  38 C.F.R. § 4.7.

Plaintiff has not shown that reasonable doubt triggering VASRD sections 4.3 and 4.7 existed or that the PDBR's decision not to apply VASRD 4.3 and 4.7 was otherwise was arbitrary and capricious or contrary to law.  (ECF No. 53-2, at 6).

## IV.  Conclusion

Based on review of the administrative record, Plaintiff has not demonstrated that Defendants' decision not to modify her disability rating was contrary to law, arbitrary and capricious, or unsupported by substantial evidence.  Thus, Plaintiff's cross-motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted.  A separate order will follow.

                                        /s/
                              DEBORAH K. CHASANOW
                              United States District Judge